Merrimack
No. 91-249

### LINDA (HUMPHRIES) BROSSEAU

v.

### GREEN ACRES MOBILE HOMES, INC.

June 17, 1992

*Cook & Molan P.A.*, of Concord (*Glenn R. Milner* on the brief and orally), for the plaintiff.

*Branch and Greenhalge P.A.*, of Concord (*Robert D. Branch* on the brief and orally), for the defendant.

BROCK, C.J.   The plaintiff, Linda Brosseau, filed an action in the Superior Court (*Dunn*, J.) claiming that the defendant, Green Acres Mobile Homes, violated the New Hampshire Regulation of Manufactured Housing Parks, RSA chapter 205-A, and the New Hampshire Law Against Discrimination, RSA chapter 354-A, and claiming the right to enhanced damages under the New Hampshire Consumer Protection Act, RSA 358-A:10. A master was appointed to report on the plaintiff's motion for summary judgment. The Court (*Manias,*

J.) approved the master's recommendation to grant summary judgment on the issue of liability. After a trial on damages, the Court (*Dunn,* J.) awarded actual damages of $7,000.00 and trebled the award under RSA 358-A:10. The defendant appeals from the decisions to grant summary judgment on liability and to award both actual and enhanced damages. We affirm the granting of summary judgment and the award of actual damages, but reverse the award of enhanced damages.

In July 1981, the plaintiff purchased a mobile home and leased a lot in the defendant's mobile home park. The lease included a provision prohibiting children under the age of eighteen from residing in the plaintiff's home. The lease incorporated by reference the park rules and regulations prohibiting tenants from selling or leasing their homes to anyone intending to occupy the home with a person under the age of eighteen. In June 1985, the park rules and regulations were amended to establish the park as a retirement community, and to prohibit residents from leasing or selling their homes to persons under forty-five years of age.

In the spring of 1986, the plaintiff listed her mobile home for sale. In October, Cindy Shookus agreed to purchase the home for $33,000. After the park manager, Mary Howard, learned that Shookus intended to reside in the park with her four-year-old daughter, she informed Shookus of the eighteen-year age restriction. Soon thereafter, Shookus withdrew her offer. She alleged that she withdrew her offer after meeting with the park owner, Tom Grappone, who denied her permission to reside in the park because of the age restrictions. Grappone, on the other hand, averred that he never met with her. The plaintiff eventually sold her home to a third party for $26,000. The plaintiff initiated this action to regain the difference between the original amount agreed upon and the final sale price.

To determine liability in this case we must resolve whether the park's age restrictions were unlawful, and, if so, whether the unlawful provisions caused Shookus to withdraw her offer to purchase the plaintiff's mobile home. Concerning the issue of liability, the defendant raises two issues. First, it argues that the trade and commerce provisions of the New Hampshire Law Against Discrimination, RSA chapter 354-A, do not apply to the operation and regulation of mobile home parks. Second, it assigns error on procedural grounds claiming that the issue of liability should not have been resolved by summary judgment.

We address the substantive issue first. The defendant argues that the court erred by applying both RSA chapter 354-A and RSA chap-

ter 205-A in this case, reasoning that the two statutes are contradictory when applied together and concluding that RSA chapter 205-A applies exclusively. We disagree.

RSA chapter 354-A was enacted, in part, to eliminate and prevent age discrimination in broad areas of trade and commerce within the State. RSA 354-A:1. To that end, RSA 354-A:8, V (1965 & Supp. 1991) declares that it shall be unlawful to discriminate on the basis of age in housing matters. The act, however, includes an exception that allows housing sales or rentals to be restricted to residents not less than forty-five years of age, if the restriction is pursuant to a plan establishing a retirement community, RSA 354-A:8, V-b(d).

RSA 205-A:2, II(d) prohibits mobile home park owners from restricting on-site sales of mobile homes on the basis of age unless the implementation of the rule providing for an age restriction has been in effect for three years *or* the restriction was included in the rules or lease when the seller commenced tenancy in the park.

■ The defendant argues that the statutes are contradictory and, therefore, RSA chapter 205-A, which expressly regulates mobile homes, must apply independently. Relying upon RSA 205-A:2, II(d), the defendant contends that it was entitled to prevent the sale to Shookus because the lease signed by the plaintiff in 1981 expressly prohibited minor occupants. Certainly, if read in isolation, RSA chapter 205-A would support the defendant's contention that any age restriction may apply so long as the restriction is included in the lease or three years has elapsed after the date of implementation. We do not agree, however, that the two statutes are contradictory. Rather, we apply a well-established rule of statutory construction: "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988) (citations omitted).

■ In considering the language of RSA chapter 354-A and RSA chapter 205-A, we discern a simple rule that is consistent with both statutes. Namely, the age restriction referred to in RSA chapter 205-A must conform to the minimum forty-five-year age restriction allowable under RSA 354-A:8, V-b(d). In other words, RSA 205-A:2, II(d) outlines the *conditions* under which age restrictions may be imposed, and RSA 354-A:8, V-b(d) specifies the age restriction that may be imposed. Thus, a manufactured housing park, designed as a retirement community, may legally limit occupancy to persons over

forty-five years of age if such age restriction is in effect at the time of the commencement of the tenancy or three years has elapsed after the enactment of the retirement community age restriction.

In this case, the requisite three years had not elapsed between the establishment of the park as a retirement community and the plaintiff's agreement with Shookus. Moreover, the minimum eighteen-year age restriction in the lease agreement between the parties restricted ages well below the forty-five-year age minimum established by RSA 354-A:8, V-b(d) and therefore did not meet the requirements of this statute. Thus, the defendant's effort to enforce the age restriction in the lease, resulting in the plaintiff losing her sale to Shookus, was unlawful and discriminatory.

We turn to the defendant's procedural challenge. First, it claims that questions of law should not be addressed on motions for summary judgment and, therefore, the court's conclusion that the park's age restriction was unlawful is procedurally erroneous. It also maintains that summary judgment was premature as a material issue of fact concerning causation remained in dispute.

Having found that the court's substantive conclusion of law was correct, we address the defendant's first argument only because it represents such a fundamental misconception of settled law. It is axiomatic that summary judgment is appropriate when the court "finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653, 581 A.2d 478, 481 (1990). The purpose of summary judgment is "to save the time, effort, and expense and to streamline the administration of justice by avoiding the formal trial of cases where there is no genuine issue of material fact." *Green Mt. Ins. Co. v. Bonney*, 131 N.H. 762, 766, 561 A.2d 1057, 1059 (1989). Without factual disputes, the only task that remains for the court is to apply the law.

The defendant's second claim, that a material issue of fact concerning liability remained unresolved, is more troublesome. Although we find that a material issue of fact was unresolved at the time the motion was granted, we decline to send this matter back for further proceedings as we are able to resolve the issue based upon testimony from the trial on damages.

On the motion for summary judgment, once the court found that the park's age restriction was unlawful, it reasoned that the issue of who informed Shookus of the rules was immaterial because a showing that Shookus had been informed, regardless of the source, was

sufficient to show causation. Shookus, however, did not state in her affidavit that she withdrew the offer as a result of becoming aware of the prohibition. Rather, she asserted that after she offered to purchase the plaintiff's mobile home, she met with the park manager who informed her of the park's minimum eighteen-year-age restriction and who told Shookus that if she wanted to buy the home that she would have to meet with the owner, Tom Grappone. Shookus alleged that she met with Grappone, and, as a result of his adamant opposition to her purchasing the mobile home, she withdrew her offer. Grappone, however, stated in his affidavit that he never met with Shookus. If his claim were true, and the trial court was required to assume that it was, one could reasonably infer that Shookus withdrew her offer for reasons other than the age restriction. Thus, given her specific assignment of blame to Grappone, whether Shookus met with him is material, and the conflicting affidavits placed the issue in dispute.

We find in the record, however, an unusual epilogue to this issue. At the conclusion of the trial on damages, the defendant offered to prove that Grappone had not denied Shookus permission to live in the park with her young daughter. The court did not accept the offer of proof, and Grappone took the stand. On direct examination, he testified that he had, indeed, met with Shookus and had informed her that the question of whether the park rules are legal was pending before the human rights commission. He testified that he never categorically denied Shookus permission to live in the park.

On cross examination, the plaintiff's counsel questioned Grappone about discrepancies between Grappone's testimony and his affidavit.

> "Q. So you swore in this affidavit that you never met Cindy Shookus?
>
> A. That's correct.
>
> Q. Had you met her at this time?
>
> A. No, I did not.
>
> Q. When did you meet with her?
>
> A. Wait a minute. Wait a minute. I met her in the fall time, what day, I don't know exactly, of [19]86.
>
> Q. When did you fill out this affidavit?
>
> A. November, [19]89.
>
> Q. So you filled out this affidavit after you met Cindy Shookus.
>
> A. That's correct.

Q. But you swore in this affidavit that you never met Cindy Shookus?

A. That's correct."

The defendant's counsel attempted to rehabilitate Grappone on re-direct by pointing out that the pleadings indicated that the meeting between Grappone and Shookus occurred in the spring of 1986, whereas Grappone recalled that the meeting took place in the fall.

Though the date of the meeting may be uncertain, that Grappone met with Shookus and discussed the age restriction is no longer disputed. Whether Grappone adamantly told Shookus that she could not live in the park because of the rules or merely informed her of the rules' pending status is not material. The fact remains that Shookus met with Grappone and thereafter withdrew her offer because of the park's unlawful and discriminatory age restrictions. The material issue, whether Shookus met with Grappone and discussed the park rules, has been resolved by Grappone's testimony.

█ In light of Grappone's testimony, we conclude that the defendant was not prejudiced by the trial court's grant of summary judgment as to liability. First, both Shookus and Grappone testified concerning the factual questions relevant to liability in a trial setting. The testimony was subject in each case to cross and re-cross examination. We have no reason to believe that the testimony would have been different had the trial formally included the issue of liability. Second, the question of fact is narrow and uncomplicated. Even when Grappone's testimony is viewed in the light most favorable to the defendant, causation was established based on the record below. Thus, the defendant has not demonstrated on appeal that it was prejudiced by the court's erroneous decision to grant summary judgment on the issue of liability. Therefore, we do not disturb that judgment.

On the issue of damages, the defendant's argument is twofold. First, the defendant claims that the plaintiff failed to sufficiently memorialize her agreement with Shookus in compliance with the statute of frauds. Second, it challenges the court's decision to award treble damages under RSA 358-A:10.

The court calculated the actual damages based on the difference between the amount offered by Shookus ($33,000), and the amount actually paid by the eventual buyer ($26,000). The defendant argues that because the plaintiff failed to reduce to writing her agreement with Shookus, the statute of frauds prevents the plaintiff from offering that agreement as a basis for measuring damages. The plaintiff

asserts that the statute of frauds is not applicable because she is not attempting to enforce the agreement with Shookus. Rather, she offered the evidence to show the extent and amount of damages.

■ We need not consider, however, whether evidence of Shookus' offer should have been excluded by the statute of frauds. The court expressly held that the agreement was reduced to writing, and the record contains evidence to support that finding. *Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co.*, 130 N.H. 345, 348, 540 A.2d 1220, 1222 (1988). Thus, we uphold the trial court's finding as to actual damages.

The court also awarded treble damages pursuant to RSA 358-A:10, which provides, in part, that the court may enhance damages for a "willful or knowing" violation of RSA chapter 205-A. According to RSA 205-A:13, "[a]ny violation of the provisions of RSA 205-A:2 shall also constitute an unfair trade practice within the meaning of RSA 358-A and may be enforced as provided therein."

■ We note at the outset that the court erroneously employed a negligence standard by holding that the defendant "knew, or should have known" that his actions violated the law. But this error does not affect our analysis, for even if we assume that the trial court applied the correct legal standard, we would hold that treble damages are inappropriate. The defendant's actions in this case, although we declare them unlawful, complied with the literal language of RSA chapter 205-A. We therefore conclude that the defendant's acts were not "willful or knowing" as the violation resulted from the defendant's failure to reconcile on its own the restrictions of the two applicable statutes, a construction addressed by this court for the first time today. *See Chambers v. Gregg*, 135 N.H. 478, 481–82, 606 A.2d 811, 814 (1992) (no attorney's fees where party required to show "knowing" violation when material statutory term undefined).

*Affirmed in part; reversed in part.*

All concurred.