Carroll
No. 2010-688

THOMAS ETTINGER *& a.*

v.

TOWN OF MADISON PLANNING BOARD

Argued: October 13, 2011
Opinion Issued: December 8, 2011

*Hastings Law Office, P.A.*, of Fryeburg, Maine (*Peter J. Malia, Jr.* on the brief and orally), for the plaintiffs.

*Mitchell Municipal Group, P.A.*, of Laconia (*Laura A. Spector* on the brief and orally), for the defendant.

LYNN, J. The defendant, Town of Madison Planning Board (the Board), appeals, and the plaintiffs, Thomas and Margaret Ettinger, cross-appeal, the decision of the Superior Court (*Houran*, J.), which: (1) held that a private session by the Board on March 3, 2010, violated the Right-to-Know Law, RSA 91-A:2 (Supp. 2010); and (2) denied the plaintiffs' request for attorney's fees. We affirm.

I

The trial court found the following facts. In June 2009, the Pomeroy Limited Partnership (Pomeroy) received conditional approval from the Board to convert the buildings on its property to a condominium ownership form and to convey part of the property to the Nature Conservancy. In January 2010, the plaintiffs, whose property abuts the Pomeroy property, requested a public hearing to allow them to challenge the approval of the condominium plan. The Board scheduled a public hearing for March 3, 2010, to consider whether to grant final approval of the Pomeroy application. The plaintiffs' attorney appeared at that hearing.

At 7:00 p.m., the scheduled time of the hearing, the Board, joined by its administrative assistant, went into a private session for thirty minutes. In that session, they read and discussed emails from the Board's attorney, a memorandum summarizing legal advice relayed over the phone from the Board's attorney to the Board's administrative assistant, and letters from the plaintiffs' attorney. The Board then reopened the hearing at 7:34 p.m. and, after hearing the plaintiffs' attorney on the matter, granted final approval to the Pomeroy application.

The plaintiffs filed a petition in superior court, arguing that the private session violated New Hampshire's Right-to-Know Law, RSA ch. 91-A (2001 & Supp. 2010), and seeking an award of attorney's fees under RSA 91-A:8, I (Supp. 2010). The superior court agreed that the private session violated the Right-to-Know Law, but refused either to invalidate the Board's approval of the Pomeroy application or to award the plaintiffs attorney's fees. This appeal followed.

## II

The Board argues that its members were permitted to read a letter from counsel and discuss its contents in a private session under the "consultation with legal counsel" exclusion from the definition of a "meeting" in the Right-to-Know Law. *See* RSA 91-A:2, I(b). The Board's view is that a consultation with legal counsel encompasses discussions of the advice of its attorney even when the attorney is not present at the discussion, or, in the alternative, that the legislature intended nothing more than to "codify the common law attorney client privilege as it applies to public bodies." The meaning of the Right-to-Know Law in this context is a question of first impression.

■ ■ The interpretation of the Right-to-Know Law is to be decided ultimately by this court. *Murray v. N.H. Div. of State Police*, 154 N.H. 579, 581 (2006). We apply the ordinary rules of statutory construction to our review of the Right-to-Know Law, and we accordingly first look to the plain meaning of the words used. *Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 475 (1996). Words and phrases are construed according to the common and approved usage of the language unless from the statute it appears that a different meaning was intended. RSA 21:1, :2 (2000). We resolve questions regarding the Right-to-Know Law with a view to best effectuate the statutory objective of facilitating open access to the actions and decisions of public bodies. *See Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 546 (1997). As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively. *Goode v. N.H. Legislative Budget Assistant*, 145 N.H. 451, 453 (2000). A public body bears the burden of proving that it may hold a nonpublic assembly of its members. *Cf. Hampton Police Assoc. v. Town of Hampton*, 162 N.H. 7, 14 (2011); *Lambert v. Belknap County Convention*, 157 N.H. 375, 379 (2008).

■ The Right-to-Know Law provides that "all meetings, whether held in person, by means of telephone or electronic communication, or in any other manner, shall be open to the public." RSA 91-A:2, II (Supp. 2010). RSA 91-A:1 (2001) expresses the legislative policy of the statute: "Openness in the conduct of public business is essential to a democratic society. The purpose of this chapter is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." The statute defines a meeting as the convening of a quorum of the membership of a public body "for the purpose of discussing or acting upon a matter or matters over which the public body has supervision, control, jurisdiction, or advisory power." RSA 91-A:2, I (Supp. 2010). "Consultation with legal counsel," however, is excluded from

that definition and is therefore not subject to the various requirements for open meetings contained in RSA 91-A:2, II. RSA 91-A:2, I(b) (Supp. 2010).

With this statutory scheme in mind, we must determine whether the Board's private session qualifies as a "consultation with legal counsel" under RSA 91-A: 2, I(b). At the outset, we note that, although the Board members merely read the memoranda and emails containing the advice of counsel during the first twenty-five minutes of their private session, they also discussed the contents of those documents at the end of the session. Since any part of the private session found to violate the Right-to-Know Law would be grounds for affirming the superior court's decision, and since the statute defines a meeting as convening a quorum "for the purpose of discussing or acting upon" matters within a public body's purview, RSA 91-A:2, I, we focus here only on whether the Board's brief discussion violated the Right-to-Know Law.

We agree with the trial court that the literal meaning of the "consultation with legal counsel" exclusion does not encompass the discussion among the board members and its administrative assistant that occurred here. A "consultation" is "a council or conference (as between two or more persons) usually to consider a special matter." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 490 (unabridged ed. 2002); *accord* BALLENTINE'S LAW DICTIONARY 257 (3d ed. 1969) ("The deliberation of two or more persons on some matter; a council or conference to consider a special case."). Read together with the phrase "with legal counsel," a "consultation" does not encompass a situation in which the public body convenes a quorum of its membership, as set out in RSA 91-A:2, I, only to discuss a legal memorandum prepared by, or at the direction of, the public body's attorney where that attorney is unavailable at the time of the discussion. At the very least, that clause requires the ability to have a contemporaneous exchange of words and ideas between the public body and its attorney.

Anticipating the difficulties a literal construction of the statute poses for its argument, the Board argues that a consultation with legal counsel is coextensive with the common-law attorney-client privilege, and therefore allows public bodies to enter nonpublic sessions to discuss the written advice of counsel. We disagree.

As an initial matter, the attorney-client privilege is an evidentiary rule allowing the attorney or client to withhold information shared in the course of the attorney-client relationship. The classic articulation of the privilege is as follows:

> Where legal advice of any kind is sought from a professional legal
> adviser in his capacity as such, the communications relating to

that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser unless the protection is waived by the client or his legal representatives.

*Riddle Spring Realty Co. v. State*, 107 N.H. 271, 273 (1966) (citing 8 J. WIGMORE, EVIDENCE §§ 2292, 2327-2329, at 554, 634-41 (McNaughten rev. 1961)). New Hampshire Rule of Evidence 502 embodies that rule, providing that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . ." N.H. R. EV. 502(b); *accord* N.H. R. PROF. CONDUCT 1.6(a) (prohibiting lawyers from revealing information "relating to the representation of a client").

■ By contrast, the Right-to-Know Law is a statute mandating that all public bodies open their meetings to the public unless one of several specific, enumerated exceptions or exclusions applies. We do not, in general, interpret a statute to abrogate the common law absent a clear legislative expression of intent to do so. *See State v. Hermsdorf*, 135 N.H. 360, 363 (1992). Here, however, we discern no reason why the attorney-client evidentiary privilege and the Right-to-Know Law cannot coexist. *See* 1A N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 23.10, at 481 (7th ed. 2009) ("The presumption against implied repeals is overcome . . . by a showing that two acts are irreconcilable, clearly repugnant as to vital matters to which they relate, and so inconsistent that they cannot have concurrent operation."); *see also State v. Wilton Railroad*, 89 N.H. 59, 61-62 (1937) (requiring a "positive repugnancy" between two provisions before repealing by implication). Whereas the common law attorney-client privilege reflects a policy of encouraging clients to consult with lawyers by enabling the free and open exchange of information between the two, the Right-to-Know Law expresses a more specific policy governing the disputed situation in this case — namely, a public body meeting to discuss matters within its purview. Moreover, to the extent that the attorney-client privilege helps prevent a public body's adversary *in litigation* from gaining an unfair advantage, the legislature has safeguarded that interest by its enactment of RSA 91-A:3, II(e) (Supp. 2010), authorizing nonpublic sessions to consider or negotiate "pending claims or litigation which has been threatened in writing or filed against the body . . . , or against any member thereof because of his membership in such body or agency . . . ." In any case, the privilege is the client's to waive, and RSA 91-A:2 operates "as a statutory public waiver of any possible privilege of the public client . . . except in the narrow circumstances stated in the statute."

*District Atty. v. Bd. of Selectmen*, 481 N.E.2d 1128, 1131 (Mass. 1985); *accord Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984).

■■ Our legislature's decision to enumerate specific exceptions to the open-meetings requirement compels our conclusion that these provisions provide the only circumstances in which a public body may enter into a private session for discussion. "[E]xceptions are not to be implied. . . . Where there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied." 2A N. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.11, at 328-30 (7th ed. 2007) (footnotes omitted). Notably, RSA 91-A:3, II (Supp. 2010) allows public bodies to consider or act upon "[o]nly" certain matters in nonpublic session. The legislature contemplated the need for private *discussions* among the board members when it enacted these ten exceptions to the open meetings mandate. The terms "discussed" in RSA 91-A:3, II(c) and "consideration" in RSA 91-A:3, II(d)-(j) stand in marked contrast to the narrower phrase "consultation with legal counsel" in RSA 91-A:2, I(b). Whereas the former provisions allow government bodies to *consider* and *discuss* the enumerated matters, the latter provision permits a far narrower category — consultation *with* legal counsel. When the legislature uses different language in the same statute, we assume that the legislature intended something different. *See State Employees Assoc. of N.H. v. N.H. Div. of Personnel*, 158 N.H. 338, 345 (2009). Had the legislature intended the exclusion in RSA 91-A:2, I(b) to cover not just consultations with legal counsel but also "consideration or discussion of the advice of counsel," the statute would have said as much. In this case, the Board met in a private session not only to read the memorandum prepared at the direction of the attorney, but also to "discuss" and "consider" the memorandum without counsel present. In the absence of an applicable exception, the clear legislative mandate of the Right-to-Know Law requires that they do so in the open. *See District Atty. v. Bd. of Selectmen*, 481 N.E.2d at 1131.

■ Finally, we disagree with the Board's contention that, because the written communications from the Board's counsel may be protected from disclosure under RSA 91-A:5 (Supp. 2010), the meeting itself need not have been open to the public. RSA 91-A:2 governs whether a meeting of a public body must be held in the open; nothing in that provision requires public bodies to share internal legal documents with the meeting's public attendees. RSA 91-A:4 and RSA 91-A:5 concern the disclosure of public records. Indeed, as the Board correctly observes, the public records disclosure law contains an exemption, in RSA 91-A:5, IV, for any "confidential" informa-

tion — further evidence that the legislature did not intend the consultation with legal counsel exclusion of RSA 91-A:2 to allow a public body to close a meeting whenever its discussion turns to advice received from its attorney who is neither physically present nor present telephonically and is therefore unable to participate in the discussion.

### III

In their cross-appeal, the plaintiffs argue that they are entitled to attorney's fees under RSA 91-A:8, I (Supp. 2010). That provision allows courts to award attorney's fees to a person who has been refused access to a public proceeding after reasonably requesting such access if the lawsuit was necessary in order to make the proceeding open to the public and the agency knew or should have known that its conduct violated the Right-to-Know Law. RSA 91-A:8, I. The plaintiffs contend that the Board should have known as "a matter of common sense" that their private session violated RSA 91-A:2. We agree with the superior court, however, that attorney's fees are not warranted here. As is evident from this decision, we have had no occasion, before today, to answer the particular question presented by the Board's actions: whether a public body's closed session to discuss the written advice of counsel who is absent fits within the "consultation with legal counsel" exclusion of RSA 91-A:2, I(b). *See Goode,* 145 N.H. at 455 (concluding that defendant neither knew nor should have known that its conduct violated RSA chapter 91-A due, in part, to the state of case law). We cannot say that, lacking guidance from this court on the narrow issue before it, the Board should have known that its nonpublic session violated the Right-to-Know Law.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.