NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2020-0268

HAMPSTEAD SCHOOL BOARD & a.

v.

SCHOOL ADMINISTRATIVE UNIT NO. 55

Argued: January 27, 2021
Opinion Issued: April 20, 2021

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael G. Eaton on the brief and orally), for the plaintiffs.

Jackson Lewis P.C., of Portsmouth (Debra Weiss Ford, Martha Van Oot, and Samuel H. Martin on the brief, and Mr. Martin orally), for the defendant.

HICKS, J. The defendant, School Administrative Unit No. 55 (the SAU), appeals an order of the Superior Court (Wageling, J.) denying its motion to dismiss the complaint filed by the plaintiffs, the Hampstead School District and Hampstead School Board (referred to collectively as Hampstead), and granting Hampstead's request for an order compelling the SAU to produce immediately an investigative report prepared by an attorney. Hampstead cross-appeals the trial court's denial of its request for attorney's fees. We modify the trial court's order in part, and affirm the order as modified.

## I. Background

The following facts either were recited by the trial court or reflect the content of documents in the appellate record. At all times relevant to the instant matter, the SAU was comprised of the Hampstead School District and the Timberlane Regional School District. All five members of the Hampstead School Board serve as SAU board members; nine members of the Timberlane Regional School Board serve on the SAU board. The SAU board's chair is a Timberlane Regional School Board member.

In November 2018, the Hampstead School Board unanimously adopted a resolution "reject[ing] and disapprov[ing] . . . the inappropriate and unprofessional conduct and commentary engaged in by" Timberlane Regional School Board members regarding certain Hampstead School District representatives and SAU administrators. In the summer of 2019, a former SAU employee and a current SAU employee alleged that certain SAU board members had engaged in workplace harassment and/or had created a hostile work environment.

Thereafter, the chair of the SAU board arranged for a Laconia lawyer to investigate the allegations. At a December 4, 2019 public session, the SAU board chair stated that "[a]n independent, experienced employment attorney conducted an extensive investigation of a hostile work environment allegation," and that the attorney had "found that the allegations had no merit." The chair also stated that the investigation was "nearly complete, with the exception of the writing of the final report."

According to a letter from the SAU's counsel, the final report was submitted on December 19, 2019. Hampstead's counsel subsequently requested to view the report pursuant to the Right-to-Know Law, see RSA ch. 91-A (2013 & Supp. 2020). The SAU declined the request, asserting that the report is exempt from disclosure under RSA 91-A:5, IV because it "pertains to internal personnel practices and is otherwise subject to the attorney-client privilege and work-product doctrine and as such constitutes confidential information." See RSA 91-A:5, IV (2013). Instead of producing the report to Hampstead and redacting information that pertained to internal personnel practices or constituted attorney-client privileged communications or attorney work product, the SAU took the position that the entire report is exempt from disclosure under the Right-to-Know Law.

Hampstead then filed the instant action, alleging that the report is a public document about public officials and, therefore, is subject to disclosure under RSA chapter 91-A. Hampstead requested that the trial court order the SAU "to immediately produce the Report," and sought an award of attorney's fees under RSA 91-A:8. See RSA 91-A:8 (2013). Hampstead also requested that the court either hold an expedited hearing on the merits of the petition or

2

order the SAU to produce the report for in camera review so that the court could determine whether the report "documents an investigation into the SAU . . . Board and individual [SAU] Board members or whether it constitutes an internal personnel practice." The SAU moved to dismiss Hampstead's complaint, asserting that "RSA 91-A:5 (IV) unambiguously exempts the [entire report] from production" because it "both relates to internal personnel practices and contains information protected by the attorney-client privilege and work-product doctrine." Hampstead opposed the motion.

The trial court held a hearing on the merits of Hampstead's petition; however, the hearing transcript is not part of the appellate record. In its order issued after the hearing, the trial court concluded that the report does not pertain to an "internal personnel practice" within the meaning of the Right-to-Know Law because it documents an investigation of employer misconduct and because the employer "is a board made up of publicly-elected officials acting in their official capacity."

Having assumed without deciding that, as the SAU contended, the entire report constitutes either attorney work product or a privileged attorney-client communication,[1] and, therefore, is "confidential" under the Right-to-Know Law, the trial court then balanced the benefits to the public of disclosing the report against the benefits to the SAU of not disclosing it. The court found that the benefits of disclosing the report to the public "are quite substantial" because the report, which was funded by taxpayer money, constituted an investigation of alleged "official misconduct by individuals holding publicly-elected positions." The court found that the public's interest in disclosure is "particularly high" because the chair of the SAU board stated in public session that the investigator had found the allegations to lack merit.

As to the SAU's interest in nondisclosure, the trial court observed that the SAU's attorney argued that the SAU "should not be required to disclose" the report because the report "could be used against [the SAU] in future litigation." When "questioned how a report that absolved the SAU Board of any wrongdoing could be used against the SAU, the SAU never clarified its reasoning." Nor did the SAU present "a direct argument as to why the balancing test . . . would favor nondisclosure."

The court stated that, despite the lack of argument by the SAU, it was "mindful of the policy considerations implicated whenever a public agency is asked to disclose information that arguably falls within the attorney-client privilege or the work product doctrine." The court noted that "[t]here could well be a chilling effect if public bodies cannot investigate their own alleged misdeeds without thereafter releasing the results of such an investigation to

---

[1] Because the trial court did not decide whether the report, in fact, constitutes an attorney-client privileged communication or attorney work product, we also express no opinion on the issue.

3

the public." The court asserted that it was not creating "a blanket rule concerning such investigations," but "balancing the competing interests once the Chair of a public body has made a public claim about the results of such an investigation, and after individual members of that very body have been precluded from reviewing the results thereof."

After considering the evidence in the record and the arguments by both sides, the court decided that the SAU had failed to carry its heavy burden to avoid disclosure in this case. Therefore, the trial court granted Hampstead's petition while denying the SAU's motion to dismiss. Although the court ordered the SAU to produce the report, the court denied Hampstead's request for attorney's fees. The parties unsuccessfully moved for reconsideration, and this appeal and cross-appeal followed.

## II. Analysis

### A. The SAU's Appeal

We first address the issues in the SAU's appeal. Resolving them requires that we interpret the Right-to-Know Law. The ordinary rules of statutory construction apply to our review of the Right-to-Know Law, and, thus, we look to the plain meaning of the words used when interpreting the statute. Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 330 (2020).

The purpose of the Right-to-Know Law "is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2013). The Right-to-Know Law is intended to "provide the utmost information to the public about what its government is up to." Seacoast Newspapers, 173 N.H. at 338 (quotation omitted). Accordingly, the Right-to-Know Law "furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Id. (quotation omitted); see N.H. CONST. pt. I, art. 8. We, therefore, resolve questions regarding the Right-to-Know Law with a view to providing the utmost information, broadly construing its provisions in favor of disclosure and interpreting its exemptions restrictively. Seacoast Newspapers, 173 N.H. at 338.

We also look to the decisions of other jurisdictions interpreting similar acts for guidance, including federal interpretations of the federal Freedom of Information Act. 38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 660 (2012). Such similar laws, because they are in pari materia, are "interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved." Montenegro v. City of Dover, 162 N.H. 641, 645 (2011) (quotation omitted). We review the trial court's statutory interpretation de novo. 38 Endicott St. N., 163 N.H. at 660.

4

At issue in this case is RSA 91-A:5, IV, which identifies materials that are exempt from disclosure under the Right-to-Know Law, including "[r]ecords pertaining to internal personnel practices; confidential, commercial, or financial information; . . . and personnel . . . files whose disclosure would constitute invasion of privacy."  RSA 91-A:5, IV.  On appeal, the SAU argues that the trial court erred by applying a balancing test to determine whether the report should be disclosed instead of applying a per se rule of nondisclosure.  Alternatively, the SAU urges us to vacate the trial court's order and remand for the court to consider whether the report either pertains to "internal personnel practices" pursuant to our recent decision in Seacoast Newspapers, 173 N.H. at 339, or constitutes a "personnel . . . file[]," within the meaning of RSA 91-A:5, IV.  Finally, the SAU contends that the trial court erred by failing to conduct an in camera review to decide whether there should be total or partial disclosure of the report.  We address each argument in turn.

### 1.  Balancing Test or Per Se Rule

The SAU first argues that the trial court erred by failing to rule that the entire report is per se exempt from disclosure under the Right-to-Know Law because it constitutes either a confidential attorney-client communication or attorney work product.  We disagree.

We have held that attorney work product and communications protected by the attorney-client privilege "fall[] within the Right-to-Know exemption for 'confidential' information."  N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 104-05 (2016).  However, records deemed "confidential" for the purposes of the Right-to-Know Law "are not per se exempt from disclosure."  Hampton Police Assoc. v. Town of Hampton, 162 N.H. 7, 14 (2011).  "Rather, to determine whether records are exempt as confidential, the benefits of disclosure to the public must be weighed against the benefits of nondisclosure to the government."  Id. (quotation omitted); see Union Leader Corp. v. Town of Salem, 173 N.H. 345, 353-54 (2020).

Indeed, it follows from our recent cases construing the Right-to-Know Law that the categorical exemptions in RSA 91-A:5, IV do not render information per se exempt from disclosure, but instead indicate that the information "is sufficiently private that it must be balanced against the public's interest," Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 553 (1997) (discussing exemption for "confidential, commercial, or financial information").  See Union Leader Corp.,173 N.H. at 353-57 (overruling Union Leader Corp. v. Fenniman, 136 N.H. 624, 627 (1993), to the extent that it applied a per se rule, rather than a balancing test, precluding the disclosure of records falling within the exemption for "internal personnel practices"); Reid v. N.H. Attorney Gen., 169 N.H. 509, 527-28 (2016).  We have recently reaffirmed that the phrase "whose disclosure would constitute an invasion of privacy" modifies "all of the kinds of information identified in RSA 91-A:5, IV."  Union

Leader Corp., 173 N.H. at 353 (emphasis added); see id. at 353-57. Accordingly, determining whether material is exempt from disclosure under RSA 91-A:5, IV requires a two-part analysis: (1) whether the information sought meets the category at issue, meaning whether it pertains to an "internal personnel practice" or constitutes "confidential, commercial or financial information" or is within another statutorily-defined category claimed by the party resisting disclosure; and (2) whether disclosure of the information constitutes an invasion of privacy. See id. at 353-57 (concerning "internal personnel practices"); Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 707 (2010) (concerning "confidential, commercial, or financial information"); Reid, 169 N.H. at 528 (concerning "personnel . . . files").

Determining whether disclosure of information constitutes an invasion of privacy involves our well-established three-step analysis. Union Leader Corp., 173 N.H. at 355. First, we evaluate whether there is a privacy interest at stake that would be invaded by disclosure. Id. Second, we assess the public's interest in disclosure. Id. Third, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. Id. If there is no privacy interest at stake, then the Right-to-Know Law mandates disclosure. Id. Whether information is exempt from disclosure because it is private is judged by an objective standard and not a party's subjective expectations. Id. The party resisting disclosure "bears a heavy burden to shift the balance toward nondisclosure." Union Leader Corp. v. City of Nashua, 141 N.H. 473, 476 (1996). In Reid, in response to the contention that disclosure of records arising from the investigation of misconduct by public officials would deter the reporting of that misconduct or the participation in such investigation, we expressed confidence "that the proper balancing of the employees' interests in privacy and the State's interest in nondisclosure against the public's interest in disclosure under our established test adequately addresses any concerns about deterrence." Reid, 169 N.H. at 533; cf. Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 556 (2002) (acknowledging "a possibility that an audit investigation may be compromised if interviewees are reluctant to disclose information to investigators" out of concern "that their responses could be released to the public," but finding that this possibility did "not . . . outweigh[] the public's interest in disclosure").

The SAU's contention that records protected by the attorney-client privilege or the work product doctrine are per se exempt from disclosure under the Right-to-Know Law rests upon an understandable, but mistaken, interpretation of our precedent. The SAU relies, in particular, upon New Hampshire Right to Life, 169 N.H. at 105-10, and Professional Fire Fighters of New Hampshire v. New Hampshire Local Government Center, 163 N.H. 613 (2012). However, in neither case did we explicitly or implicitly overrule our prior cases.

In New Hampshire Right to Life, the government party resisting disclosure alleged that certain documents were "confidential" under the Right-to-Know Law because they constituted attorney work product. N.H. Right to Life, 169 N.H. at 104-05. The trial court agreed. See id. at 104. The only issues on appeal regarding those documents concerned the first part of our two-part analysis, whether the records constituted "confidential . . . information" within the meaning of the statute. See id. at 105-10. For those documents, there was no appeal issue related to the second part of the analysis, whether disclosure of the records would constitute an invasion of privacy. See id. Although we referred to the records that constituted attorney work product as being "exempt from disclosure," we used that phrase to indicate that they fell within the exemption for confidential information. Id. at 106-08. Our use of that phrase did not indicate that we adopted a per se rule of nondisclosure.

In Professional Fire Fighters of New Hampshire, as in New Hampshire Right to Life, we focused solely upon the first part of the analysis: whether the information sought (meeting minutes) met the category at issue (confidential information). Prof. Fire Fighters of N.H., 163 N.H. at 614-16. The trial court in Professional Fire Fighters of New Hampshire ruled that the meeting minutes were confidential under the Right-to-Know Law because they constituted privileged attorney-client communications. Id. Affirming that decision, we did not refer to the second part of the analysis in that case because the issue on appeal did not require us to do so.

To the extent that New Hampshire Right to Life or Professional Fire Fighters of New Hampshire can be interpreted otherwise, we now clarify that neither case explicitly or implicitly overruled our long-standing precedent requiring a two-part analysis of whether the material at issue can be considered "confidential" and whether its disclosure would constitute an invasion of privacy. See Union Leader Corp., 173 N.H. at 353-55 (citing cases). Accordingly, we hold that the trial court in the instant case did not err by proceeding to the second part of the analysis — whether disclosing the report would constitute an invasion of privacy — after having assumed that the first part of the analysis was satisfied.[2]

---

[2] To the extent that the SAU argues that the evidentiary privileges for confidential attorney-client communications and attorney work product "trump" the Right-to-Know Law, the SAU is mistaken. Although we do not, generally, interpret a statute to abrogate the common law absent a clear expression of legislative intent to do so, "we discern no reason why the [attorney work product and] attorney-client evidentiary privilege[s] and the Right-to-Know Law cannot coexist." Ettinger v. Town of Madison Planning Bd., 162 N.H. 785, 790 (2011). Such privileges are the client's to waive, and RSA 91-A:5, IV "operates as a statutory public waiver of any possible privilege of the public client except in the narrow circumstances stated in the statute." Id. (quotation and ellipsis omitted).

## 2. Vacate and Remand

Alternatively, the SAU argues that we should vacate the trial court's order and remand for the court to consider whether the report pertains to "internal personnel practices" or constitutes a "personnel . . . file[]" under Seacoast Newspapers, which we decided after the trial court issued its decision. In Seacoast Newspapers, we overruled Fenniman and its progeny to decide that the "internal personnel practices" exemption under the Right-to-Know Law "applies narrowly to records pertaining to internal rules and practices governing an agency's operations and employee relations," and that it does not apply to "information concerning the performance of a particular employee." Seacoast Newspapers, 173 N.H. at 337, 339. We also concluded that "records documenting the history or performance of a particular employee fall within the exemption for personnel files." Id. at 340.

On appeal, the SAU does not challenge the trial court's description of the report as an investigation into the alleged misconduct of an employer comprised of "publicly-elected officials acting in their official capacity." Rather, the SAU contends that the report pertains to "internal personnel practices" within the meaning of the Right-to-Know Law because it "implicates the SAU Board's relations with multiple SAU employees." The SAU argues that it should be permitted to demonstrate to the trial court, on remand, that the report pertains to "internal personnel practices" as defined by Seacoast Newspapers or constitutes a "personnel . . . file[]." RSA 91-A:5, IV.

Hampstead counters that there is no need to remand for the trial court to decide whether, in addition to meeting the first part of the analysis because the report is deemed "confidential," the report also meets the first part because it pertains to "internal personnel practices" or is a "personnel . . . file[]." Id. Nor is there a need to remand for the trial court to again apply the second part of the analysis. Hampstead argues that, even if the report pertains to "internal personnel practices" or is a "personnel . . . file[]," the decision whether to disclose the report is governed by the second part of our two-part analysis — the same invasion of privacy three-step test that the trial court has already applied, and on which the SAU has already failed to prevail. Because we agree with Hampstead, we decline the SAU's request that we vacate the trial court's order and remand for it to consider whether the report pertains to "internal personnel practices" or is a "personnel . . . file[]." See Union Leader Corp., 173 N.H. at 357 (concluding that "the balancing test we have used for the other categories of records listed in RSA 91-A:5, IV . . . appl[ies] to records relating to 'internal personnel practices'"); Reid, 169 N.H. at 527 (holding "that the determination of whether material is subject to the exemption for 'personnel . . . files' . . . requires a two-part analysis of: (1) whether the material can be considered a 'personnel file' or part of a 'personnel file'; and (2) whether disclosure of the material would constitute an invasion of privacy").

8

As we explain below, further litigation is possible given that the SAU is now tasked with determining whether any information in the report should be redacted because, on balance, the interests in not disclosing that information outweigh the interests in disclosing it. We direct the parties and the court to our decision in Reid in which we discussed, at length, the privacy interests and countervailing public interests that might be implicated by disclosing an investigative report of alleged public official misconduct. See Reid, 169 N.H. at 527-33.

### 3. In Camera Review

In its reply brief, but not its opening brief, the SAU argues that the trial court erred by failing to follow the procedure we set forth in Lodge v. Knowlton, 118 N.H. 574, 577 (1978). In that case, we instructed that, in an action brought under the Right-to-Know Law by a town resident seeking to review a police file, on remand the trial court "should . . . require in camera review to decide whether there will be total or partial nondisclosure." Lodge, 118 N.H. at 577. We also stated that this process "should" be used "in future cases." Id. But see N.H. Housing Fin. Auth., 142 N.H. at 548-49 (clarifying that a trial court need not review documents in a Right-to-Know Law case in camera if "the document's subject matter can be described in general terms such that persons objecting to closure can present an adequate argument to the court" or if, in a large document case, a Vaughn index has been prepared (quotation and ellipsis omitted)). As explained below, this argument is now moot.

We note that the trial court granted Hampstead's request for an order compelling the SAU to immediately produce the entire report. At oral argument, however, counsel for Hampstead acknowledged that, before producing the report to Hampstead, it will be incumbent upon the SAU to decide whether any specific information in the report should be redacted. See Reid, 169 N.H. at 527-33 (detailing the privacy interests that could be at stake in disclosing an investigation of public official misconduct and the potential public interests in disclosure of that information). Once the SAU has made those determinations, if Hampstead seeks disclosure of the redacted information, it may then be necessary to request that the trial court review the redacted information in camera to decide whether the redaction was proper under the Right-to-Know Law. In light of this representation at oral argument, we modify the trial court's order to allow the SAU, prior to producing the report, to determine whether any specific information in the report should be redacted, and to permit Hampstead, should it seek disclosure of any redacted information, to seek relief in the trial court. As so modified, we affirm the trial court's disclosure order. In light of our decision, the SAU's argument regarding in camera review is moot.

9

B.  Hampstead's Cross-Appeal

We next address the single issue in Hampstead's cross-appeal: whether the trial court erred by denying Hampstead's request for attorney's fees.  RSA 91-A:8 governs remedies for violations of the Right-to-Know Law.  Under RSA 91-A:8, I, attorney's fees shall be awarded to a plaintiff if the trial court finds that: (1) "such lawsuit was necessary in order to make the information available"; and (2) "the public body, public agency, or person knew or should have known that the conduct engaged in was a violation of RSA chapter 91-A." Prof'l Firefighters of N.H., 159 N.H. at 710 (quotations and brackets omitted).  We will defer to the trial court's findings of fact unless they are unsupported by the evidence or erroneous as a matter of law.  Id.

The trial court ruled that Hampstead was not entitled to an award of attorney's fees because, "[g]iven the nature of the legal issues involved, the SAU had a reasonable basis to believe that the Report was exempt from disclosure under the 'confidential' exemption set forth in RSA 91-A:5, IV."  The trial court observed that, although it ultimately ruled against the SAU, "the issues involved are not so clear-cut that the 'knew or should have known' standard is satisfied here."  We agree and conclude, based upon "the record, the trial court's findings, and the law in this area," that the SAU "neither knew nor should have known that its conduct violated the statute." Goode v. N.H. Legislative Budget Assistant, 145 N.H. 451, 455 (2000).  Accordingly, we hold that the trial court properly denied Hampstead's request for attorney's fees. See id.

Although Hampstead asserts that the trial court should have awarded Hampstead at least a "proportionate share of the reasonable attorney's fees it incurred," Hampstead has failed to provide a record demonstrating that it made this argument in the trial court.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  In its motion to reconsider, Hampstead did not ask the trial court for a "proportionate share" of attorney's fees.  Therefore, we decline to address this argument, which appears to have been made for the first time on appeal.  See id.  To the extent that Hampstead seeks attorney's fees for defending the SAU's appeal, we decline its request.

Modified in part; and affirmed as modified.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

10