Carroll
No. 78-097

BRUCE LODGE

v.

HAROLD KNOWLTON, COLONEL, NEW HAMPSHIRE STATE POLICE

September 18, 1978

*William P. Shea*, of Sanbornville, by brief and orally, for the plaintiff.

*Thomas D. Rath*, attorney general (*Anne E. Cagwin*, attorney, orally), for the defendant.

PER CURIAM. This is an appeal under the Right to Know Law from a denial of public access to a State police investigative file. The plaintiff is a resident of the town of Wakefield who seeks to review the file prepared by the State police regarding a car accident involving a town police cruiser under the control of its chief of police, Michael Senecal. In his petition, the plaintiff asserted that the department of safety would release the accident and investigative report to the town selectmen if they so requested it and that the file was a public record subject to disclosure under RSA 91-A:4 and :5. The petition was denied by *Cann*, J., who transferred plaintiff's exception.

Initially the defendant asserts that the division of State police in the department of safety is not an agency covered by the Right to Know Law. The act includes "[a]ny board or commission of any state agency or authority." RSA 91-A:1-a III (Supp. 1977). In construing this phrase we must be mindful of the recently enacted preamble to the law which states that its purpose "is to ensure . . . the greatest possible public access to the actions . . . and records of *all* public bodies. . . ." RSA 91-A:1 (Supp. 1977) (emphasis added). This law now has constitutional dimension in our Bill of Rights because of the addition to pt. I, art. 8, in 1976, providing that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." In 1974 the Governor issued Executive Order No. 74-1 stressing the public's access to records "of each department, agency, board and commission within the state." Finally, the act itself explicitly exempts only one executive branch agency, the department of employment security. RSA 91-A:6. In 1975 the house of representatives passed, but the senate rejected, an amendment to chapter 91-A that would have lifted this unique exemption.

The report of the house judiciary committee said that, if enacted, the amendment "would make the state right to know law apply to the department of employment security the *same as other departments.*" N.H.H.R. Jour. 600 (1975) (emphasis added). We conclude that with the exception of the department of employment security all State executive branch agencies and departments were meant to be and are included within the provisions of RSA ch. 91-A.

The more troublesome question is the definition of "public record" as it appears in RSA 91-A:4, :5. In a 1974 memorandum concerning the Right to Know Law, the attorney general "stressed that there are records such as police investigation records . . . [that are] not subject to public inspection." 1 Executive Bulletin No. 7, at 3 (January 22, 1974). The State Security and Privacy Plan also excludes such records from public examination. Governor's Commission on Crime and Delinquency Security and Privacy Plan 5, 6 (1976).

In determining what is or is not a public record we have said, with regard to salaries of local teachers, that "the benefits of disclosure to the public are to be balanced against the benefits of nondisclosure to the administration of the school system and to the teachers." *Mans v. Lebanon School Bd.,* 112 N.H. 160, 162, 290 A.2d 866, 867 (1972). *See also Menge v. City of Manchester,* 113 N.H. 533, 311 A.2d 116 (1973).

■■ At the federal level, the Freedom of Information Act now exempts

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of privacy, (D) disclose the identity of a confidential source, and in the case of a record compiled by a law enforcement authority in the course of a criminal investigation, or by any agency conducting a lawful national security investigation, confidential information furnished only by a confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

5 U.S.C. § 552(b)(7) (Supp. 1975). If the requested material is an "investigatory record compiled for law enforcement purposes," it may be withheld if the government can prove one of the six statutory adverse results. The agency, of course, must first show that the file

is 1) investigatory and 2) compiled for law enforcement purposes. *See generally Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974); Note, 14 Am. Crim. L. Rev. 73, 111 (1976). Even national security information is at least reviewable by a judge *in camera* to determine if it should be exempt from public inspection. *Bell v. United States*, 563 F.2d 484 (1st Cir. 1977).

We conclude that the six-prong test of 5 U.S.C. § 552(b)(7) (Supp. 1975) provides a good standard to effectuate the balance of interests required by RSA ch. 91-A with regard to police investigatory files. In the absence of legislative standards for such files we adopt it for the guidance of our judges who may be faced with such cases. *See Nakagawa v. Heen*, 58 Haw. 316, 568 P.2d 508, at 511–12 (1977). The trial court should also in this case, and in future cases, require *in camera* review to decide whether there will be total or partial nondisclosure. This decision should be made in accordance with the guidelines discussed in this opinion and with our previously stated "intention to resolve questions 'with a view to providing the utmost information.' " 113 N.H. at 537, 311 A.2d at 118.

Accordingly, we remand for a new hearing consistent with this opinion.

*Remanded.*

GRIMES, J., did not sit.