Merrimack
No. 90-623

MARY P. CHAMBERS *& a.*

v.

JUDD GREGG, GOVERNOR *& a.*

April 24, 1992

*Bruce E. Friedman,* of Concord, on the brief and orally, for the plaintiffs.

*John P. Arnold,* attorney general (*George Dana Bisbee,* deputy attorney general, on the brief and orally), for the defendants.

BROCK, C.J.  The defendants appeal a Superior Court (*McHugh,* J.) ruling requiring them to produce agency budget requests and income estimates for public review, pursuant to New Hampshire's Right-to-Know Law, RSA chapter 91-A. We affirm.

On October 24, 1990, one of the plaintiffs, Representative Mary P. Chambers, requested access to the fiscal year 1992 and 1993 agency budget recommendations submitted pursuant to RSA 9:4 and income estimates prepared by the commissioner of administrative services (commissioner) pursuant to RSA 9:5. The plaintiff's request was denied by the defendant, Assistant Commissioner Hill, by letter dated October 25, 1990. Shortly thereafter, Representative Chambers filed a petition in the superior court pursuant to the New Hampshire Right-to-Know Law, RSA 91-A:4, seeking access to the budget submissions. Following a hearing on the merits, the court granted the plaintiff's request and ordered the defendants to make the records available for review by November 2, 1990. The defendants complied, but also sought timely reconsideration of the matter. On November 21, the trial court denied the defendants' motion to reconsider, and this appeal followed.

After the defendants complied with the trial court's ruling, they appealed to this court for a definitive ruling on whether the trial court was correct in requiring the release of the expenditure and income estimates prior to the public hearings required by RSA 9:7. Because this case is "'capable of repetition, yet evad[es] review,'" *Royer v. State Dept. of Empl. Security,* 118 N.H. 673, 675, 394 A.2d 828, 829 (1978) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 148 (1975)), mootness does not prevent us from deciding this case on the merits.

The defendants first argue that the statutory scheme for development of the budget and the history of its implementation permit the Governor to withhold the release of the data to the public until the statutorily mandated public hearings are held pursuant to RSA 9:7. In the alternative, the defendants, not disputing that the information sought constitutes public documents, contend that these budgetary submissions are confidential, and are therefore exempt from provisions of the Right-to-Know Law. The plaintiffs, naturally, deny that the statutory scheme permits a delay in the release of the data and argue that it is not confidential. Further, they assert that, even if the information is classified as confidential, a proper application of the necessary balancing test would still lead to the release of the documents.

Initially, we must determine whether the statutory scheme provides authority for the Governor to withhold the release of the budgetary figures until the time of the public hearings under RSA 9:7. According to the defendants, the Governor needs time to review the figures with the various agency department heads and develop his actual budget proposal for submittal to the legislature.

The statutory framework for preparation of the budget nowhere provides for formal involvement of the Governor until the tentative budget is transmitted to him by the commissioner pursuant to RSA 9:6. While it is true that the Governor interacts informally with the agencies in arriving at estimates that are eventually used to form the tentative budget, the statute requires that these estimates be completed by October 1. RSA 9:4, :5. According to RSA chapter 9, budget estimates must be submitted to, and income estimates must be prepared by, the commissioner by October 1. RSA 9:4, :5. *From these estimates*, the commissioner is required to prepare a tentative budget by November 1. RSA 9:6. In other words, the estimates are to be *completed* by October 1 so that the commissioner can utilize them when preparing the tentative budget. Once the estimates are submitted to the commissioner pursuant to the October 1 deadline, the latter's task is purely ministerial; the commissioner's sole responsibility is to compile the information necessary to formulate the tentative budget.

■ The record reflects that the process of developing agency expenditure submissions began in May and that by October 1 the Governor had already reviewed several drafts of estimated departmental expenditures. The defendants have availed themselves of all of the time allotted for the development of the figures, and as of

October 1, according to the legislative mandate, the public is entitled to enter the fray. Therefore, the requested budget figures are subject to public scrutiny at the time of the statutory deadline for their submission to the commissioner, *i.e.*, October 1, as required by RSA 91-A:4, IV, unless they fall under one of the exemptions expressed in RSA 91-A:5 (1990 & Supp. 1991).

■ RSA 91-A:5 provides that certain records are exempt from the provisions of chapter 91-A. The only exemption relied upon by the defendants is RSA 91-A:5, IV (Supp. 1991), which excludes "[r]ecords pertaining to . . . confidential . . . information." To determine whether the budgetary and income estimates are exempt as confidential, the benefits of disclosure to the public must be weighed against the benefits of non-disclosure to the government. *See Mans v. Lebanon School Bd.*, 112 N.H. 160, 162, 290 A.2d 866, 867 (1972).

The defendants argue that the benefits of non-disclosure outweigh those of disclosure because "[the records sought] are deliberative documents containing significant policy recommendations and proposals." As previously noted, however, any "decisions" must be completed by October 1, and, therefore, there is no deliberative process provided for in the statute after that time. While it is arguable that the interaction between the Governor and department heads prior to October 1 constitutes "a deliberative process" which might be protected, that is not an issue presently before us.

On the other hand, the benefits of disclosure to the public are numerous. For example, by obtaining the information on or near the October 1 deadline, not only may interested members of the public prepare for the public hearings held by the Governor pursuant to RSA 9:7, but they may also make informed decisions before the upcoming election.

■ Therefore, after balancing the benefits of disclosure against those of non-disclosure, we conclude that the defendants' argument that the estimates are exempt pursuant to RSA 91-A:5, IV (Supp. 1991) must fail. Consequently, as of October 1, the documents are not confidential and are subject to public review as of the statutorily mandated submission date of October 1.

■ Lastly, we consider plaintiff's request for attorney's fees pursuant to RSA 91-A:8. This statute provides for the award of attorney's fees to any person who reasonably requests public records, and, contrary to RSA chapter 91-A, is denied this information. However, this statute also provides that attorney's fees are not to be

awarded "unless the court finds that the body, agency or person knew or should have known that the conduct engaged in was a violation of this chapter . . . ." RSA 91-A:8, I. As noted, confidential documents are not subject to public disclosure under the Right-to-Know Law. RSA 91-A:5, IV (Supp. 1991). In this case, the legislature did not define "confidential," and the defendants determined that the requested information was "confidential." This determination, albeit incorrect, when combined with the past history of the budgetary process, leads us to conclude that the defendants did not knowingly violate, nor did they have reason to know that their refusal would violate, the provisions of RSA chapter 91-A. Accordingly, the plaintiff's request for attorney's fees is denied.

*Affirmed.*

HORTON, J., did not sit; the others concurred.