Hillsborough-southern judicial district
No. 95-185

UNION LEADER CORPORATION

v.

CITY OF NASHUA

December 5, 1996

*Malloy & Sullivan*, of Manchester (*Gregory V. Sullivan* on the brief and orally), for the plaintiff.

*Mark J. Bennett* and *James M. McNamee*, Office of Corporation Counsel, City of Nashua (*Mr. Bennett* on the brief, and *Mr. McNamee* orally), for the defendant.

*Jeffrey R. Howard*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, on the brief), for the State, as *amicus curiae*.

BROCK, C.J. The plaintiff, Union Leader Corporation, appeals the Superior Court (*Hampsey*, J.) denial of its petition for information under RSA chapter 91-A, New Hampshire's Right-to-Know Law. We vacate and remand.

The following facts are not in dispute. In 1994, a Nashua police officer arrested Alan H. Rudman and charged him with aggravated driving while intoxicated. *See* RSA 265:82-a, I (1993). The city prosecutor later entered *nolle prosequi* on this charge, and Rudman pleaded guilty to a charge of speeding. In its report to the attorney general, *see* RSA 265:82-c, II (Supp. 1996), the city explained the reduction in charge in this way: "Reduced due to defendant observed to have no impairment on video, no breath test, no field sobriety tests within the Nashua Police Department."

The plaintiff sought disclosure of three items in Rudman's police file under the Right-to-Know Law: a copy of the transcript of the arresting officer's deposition, the officer's narrative arrest report, and a videotape of Rudman taken during his arrest. In its petition, the plaintiff asserted that "the City has reduced and/or dismissed a seemingly disproportionate number of driving while intoxicated cases," and that the information sought was "public information relating to the business and operation of both a law enforcement agency and a district court." The city refused access to the items, asserting that the records were exempt from the Right-to-Know Law because releasing the records "would constitute an unwarranted invasion of Mr. Rudman's privacy, which is a legitimate ground for not releasing it" under the decision in *Lodge v. Knowlton*, 118 N.H. 574, 576, 391 A.2d 893, 895 (1978). *See* RSA 91-A:5, IV (1990) (amended 1995).

The trial court reviewed the evidence *in camera*, without a record or the presence of counsel. After a hearing at which no record was requested, the court found

> that the plaintiff's asserted reason for seeking disclosure,
> to investigate the seemingly disproportionate number of
> plea bargains or dismissals of DWI cases, is outweighed by

Rudman's interest in privacy. The plaintiff's justification, in light of the fact that it only seeks the records for a *single* arrestee, is dubious at best, and therefore, the court concludes that disclosure would constitute an unwarranted invasion of Rudman's privacy.

The plaintiff appealed, arguing that the superior court erred in conducting its *in camera* inspection outside the presence of counsel and in concluding that disclosure of the information would constitute an unwarranted invasion of Rudman's privacy.

■ Our Right-to-Know Law does not provide explicitly for treatment of requests for police investigative files, although it does provide that material shall be exempt from disclosure under the law if "disclosure would constitute [an] invasion of privacy." RSA 91-A:5, IV. In *Lodge*, we adopted the six-prong test included in the federal Freedom of Information Act, *see* 5 U.S.C. § 552(b)(7) (1982) (amended 1986) (FOIA), to guide courts in evaluating requests for access to police investigative files. *Lodge*, 118 N.H. at 577, 391 A.2d at 895. One exemption in the *Lodge* list is for "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of privacy." *Id.* at 576, 391 A.2d at 895 (quotation omitted). This language in *Lodge* offers no assistance beyond the language of the statutory exemption itself; accordingly, when an exemption is claimed on privacy grounds, we need only decide whether disclosure of the information "would constitute [an] invasion of privacy" within the meaning of RSA 91-A:5, IV. *See U.S. Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 771 (1989) (discussing when an invasion of privacy may be "warranted").

"The interpretation of a statute is to be decided ultimately by this court." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994). The ordinary rules of statutory construction apply to our review of the Right-to-Know Law, and we accordingly look to the plain meaning of the words used. *See Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994); *Union Leader Corp. v. Fenniman*, 136 N.H. 624, 626, 620 A.2d 1039, 1040 (1993). To advance the purposes of the Right-to-Know Law, we construe provisions favoring disclosure broadly and exemptions narrowly. *See, e.g., Fenniman*, 136 N.H. at 626, 620 A.2d at 1040; *Herron v. Northwood*, 111 N.H. 324, 326, 282 A.2d 661, 663 (1971).

When we review exemptions from the Right-to-Know Law, we balance the public interest in disclosure of the requested information against the government interest in nondisclosure, and in privacy exemption cases, the individual's privacy interest in nondis-

closure. *See, e.g., Chambers v. Gregg*, 135 N.H. 478, 481, 606 A.2d 811, 813 (1992); *Mans v. Lebanon School Bd.*, 112 N.H. 160, 162, 290 A.2d 866, 867 (1972). When the exemption is claimed on the ground that disclosure would constitute an invasion of privacy, we examine the nature of the requested document or material and its relationship to the basic purpose of the Right-to-Know Law. In the absence of disputed facts, we review the trial court's balancing of the public's interest in disclosure and the interests in nondisclosure *de novo. See Chambers*, 135 N.H. at 481, 606 A.2d at 813; *Mans*, 112 N.H. at 162-63, 290 A.2d at 867; *cf. Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 95 (6th Cir. 1996) (explicitly providing for *de novo* review for summary judgment in FOIA case).

█  The legislature has provided the weight to be given one side of the balance, declaring the purpose of the Right-to-Know Law in this way: "Openness in the conduct of public business is essential to a democratic society. The purpose of this chapter is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (1990); *see Carter v. Nashua*, 113 N.H. 407, 416, 308 A.2d 847, 853 (1973); *see also* N.H. CONST. pt. I, art. 8. In other words, the purpose is to provide the utmost information to the public about what its "government is up to." *EPA v. Mink*, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting) (quotation omitted); *see Lodge*, 118 N.H. at 577, 391 A.2d at 895. When a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure. *See Petition of Keene Sentinel*, 136 N.H. 121, 127, 612 A.2d 911, 914 (1992).

█  In its order, the trial court considered the plaintiff's motives in seeking the information. In Right-to-Know Law cases, the plaintiff's motives for seeking disclosure are irrelevant. *E.g., Mans*, 112 N.H. at 162, 290 A.2d at 867; *see Reporters Committee*, 489 U.S. at 771. This is because the Right-to-Know Law "give[s] any member of the public as much right to disclosure as one with a special interest in a particular document," *Reporters Committee*, 489 U.S. at 771 (quotation and brackets omitted), and accordingly "[t]he motivations of . . . any member of the public . . . are irrelevant to the question of access," *Petition of Keene Sentinel*, 136 N.H. at 128, 612 A.2d at 915. We reject the approach taken by the trial court as inconsistent with the purposes of the Right-to-Know Law.

> If the general public has a legitimate, albeit abstract, interest in the requested information such that disclosure is warranted, disclosure must be made despite the fact that

the party actually requesting and receiving the information may use it for less-than-lofty purposes.

Conversely, if disclosure of the requested information does not serve the purpose of informing the citizenry about the activities of their government, disclosure will not be warranted even though the public may nonetheless prefer, albeit for other reasons, that the information be released.

*Halloran v. Veterans Admin.*, 874 F.2d 315, 323 (5th Cir. 1989); *see Reporters Committee*, 489 U.S. at 771. Although the particular motives of the requesting party are irrelevant to reaching the proper balance, we agree with the United States Supreme Court's observation in *Reporters Committee* that

[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within th[e] purpose [of the FOIA]. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In th[e *Reporters Committee*] case — and presumably in the typical case in which one private citizen is seeking information about another — the requester [did] not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to [the *Reporters Committee*] request would not shed any light on the conduct of any Government agency or official.

*Reporters Committee*, 489 U.S. at 773.

Having noted the public's strong interest in disclosure of information pertaining to its government's activities, we also note that there may be strong privacy interests at stake on the other side of the balance, particularly in law enforcement investigatory records:

[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity. Protection of this privacy interest is a primary purpose of [the FOIA] exemption 7(C). The 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators.

*Stern v. F.B.I.*, 737 F.2d 84, 91-92 (D.C. Cir. 1984) (quotation omitted); *see Halloran*, 874 F.2d at 318 (stating that privacy exemptions to the FOIA recognize that nondisclosure of government information is, in some circumstances, in the public interest); *Senate*

*of Puerto Rico v. U.S. Dept. of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987) (noting that "disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm").

■ The balance between the public's interest in disclosure and a private citizen's interest in privacy will never be easy to strike. "Success lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." *Halloran*, 874 F.2d at 319 (quotation omitted). With the strong presumption in favor of disclosure, the formula must provide first for an inquiry into whether there is a privacy interest that *would be* invaded in the case of disclosure. RSA 91-A:5, IV; *see Reporters Committee*, 489 U.S. at 762. "If there is not, the basic policy of the [Right-to-Know Law] mandates disclosure." *Johnson v. U.S. Dept. of Justice*, 739 F.2d 1514, 1518 (10th Cir. 1984) (quotation omitted), *overruled on other grounds by Hale v. U.S. Dept. of Justice*, 2 F.3d 1055 (10th Cir. 1993). Because the trial court considered the particular motives of the plaintiff, and because the trial court did not have the benefit of this opinion when considering the interests in the instant case, we vacate its decision and remand for further proceedings.

■ The plaintiff also asserts that the trial court erred in conducting its review of the requested material *in camera* without the presence of counsel. We reject this argument. Although the procedure should be used cautiously and rarely, *see Pollard v. F.B.I.*, 705 F.2d 1151, 1153-54 (9th Cir. 1983), *ex parte in camera* review of records whose release may cause an invasion of privacy is plainly appropriate. *See Brown v. Minter*, 254 S.E.2d 326, 327 (Ga.) (decided under state open records act), *cert. denied*, 444 U.S. 844 (1979); *cf. Dept. of Air Force v. Rose*, 425 U.S. 352, 374 (1976) (concluding that FOIA provision for redaction of some material "was added explicitly to authorize *in camera* inspection"); *State v. Gagne*, 136 N.H. 101, 105, 612 A.2d 899, 901 (1992) (*in camera* review used as a step between partial disclosure and total nondisclosure of confidential records). For purposes of appellate review, however, a record must be taken of any hearings that are held, whether counsel for one or both parties are present. *Cf. State v. Brodowski*, 135 N.H. 197, 201, 600 A.2d 925, 927 (1991) (trial court's duty to record *ex parte* discussion with jury venire).

*Vacated and remanded.*

All concurred.