NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is:
https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Cheshire
Case No. 2024-0250
Citation: Keene Publ'g Corp. v. Fall Mountain Reg'l Sch. Dist., 2025 N.H. 35

KEENE PUBLISHING CORPORATION

v.

FALL MOUNTAIN REGIONAL SCHOOL DISTRICT, SAU 60

Argued: March 6, 2025
Opinion Issued: August 12, 2025

Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Gregory V. Sullivan and Kathleen C. Sullivan on the brief, and Gregory V. Sullivan orally), for the plaintiff.

Soule, Leslie, Kidder, Sayward & Loughman, PLLC, of Salem (Diane M. Gorrow on the brief and orally), for the defendant.

NEA-New Hampshire, of Concord (Lauren Snow Chadwick on the brief and orally), for the intervenor.

DONOVAN, J.

[¶1] The plaintiff, Keene Publishing Corporation, appeals several orders of the Superior Court (Smith, J.) in this action seeking disclosure under the Right-to-Know Law, RSA chapter 91-A (2023 & Supp. 2024), of records held by the defendant, Fall Mountain Regional School District, SAU 60 (the District). These orders, among other things, granted the District's motion for in camera review of the records, exempted the records requested by the plaintiff from disclosure pursuant to RSA 91-A:5, XII (2023) and RSA 91-A:5, IV (2023), and determined that the District satisfied its statutory obligations pursuant to RSA 91-A:4, I-a (2023).

[¶2] We conclude that the trial court may conduct an in camera review of records requested pursuant to RSA chapter 91-A without counsel present when disclosure may cause an invasion of privacy under RSA 91-A:5, IV. We further conclude that the trial court properly applied the established doctrines for attorney-client privilege and attorney work product in deciding that certain records are exempt from disclosure pursuant to RSA 91-A:5, XII. However, we also conclude that the trial court erred in its application of the exemption for confidential information and personnel files under RSA 91-A:5, IV. Accordingly, we affirm in part, reverse in part, and remand.

I.        Facts & Procedural Posture

[¶3] The record supports the following facts. In August 2022, the plaintiff sent a Right-to-Know Law request to the District for disclosure of records pertaining to an investigation that concerned a long-time employee (the Intervenor). After receiving complaints that the Intervenor sexually harassed other District employees (the Complainants) at work and outside work hours, the District retained a law firm to conduct an investigation pursuant to the District's Title IX process. The investigation culminated in a report (the Report) that documented the law firm's findings. In July 2022, the District entered into a settlement agreement (the Settlement Agreement) with the Intervenor that, among other things, ended his employment. At that time, the District paid the Intervenor his regular salary and for his accrued leave time. The District also paid a lump sum of $17,991.77 and a portion of the Intervenor's health insurance premiums through October 2022.

[¶4] In its August 2022 request, the plaintiff sought disclosure of "any and all documents . . . related to the resolution of [the] investigation concerning [the Intervenor]." The District, acting through counsel, responded that it "under[stood] [the] request to be for a copy of [the Report] and report file" and denied the request. The District asserted that RSA 91-A:5, IV exempted the Report and report file from disclosure. In October 2022, the plaintiff repeated its request and asked the District to "cite the specific exemption relied upon and the source for that exemption" in the event that the District declined to provide the

2

requested records.  The District denied the request for the reasons stated in its previous response.  The plaintiff renewed its request twice more, and each time the District declined to provide the records for the same reasons.

[¶5] Following these exchanges, the plaintiff filed a complaint against the District in superior court asking the court to order "disclos[ure of] all of the records and information in its possession relating to the investigation of [the Intervenor]."  The complaint alleged that Part I, Articles 8 and 22 of the State Constitution and RSA chapter 91-A required disclosure.  The Intervenor filed a motion to intervene, which the court granted.  The Intervenor subsequently filed a motion to seal and a motion for a protective order over information related to the case.  The plaintiff objected to both motions.  In July 2023, the trial court held a hearing, after which the District moved for in camera review of the requested records.

[¶6] In an order issued in September 2023, the trial court granted the District's motion for in camera review.  The order directed the District to provide the court and the plaintiff with a memorandum of law and a Vaughn index that contained "'a general description of each document withheld and a justification[] for its nondisclosure.'"  See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  The District subsequently provided a Vaughn index and a memorandum of law to the trial court, the plaintiff, and the Intervenor.  After conducting the in camera review, the trial court issued an order in October that granted the motion for a protective order and partially granted the Intervenor's motion to seal.  In this order, the trial court explained that "all or some of the records may be subject to exemptions under RSA 91-A," found "that the plaintiff is deprived of the opportunity to make complete, informed arguments without access to the records, in redacted form," and ruled that the trial court would distribute redacted records to the parties.

[¶7] The trial court subsequently redacted the records and issued a protective order over these redacted records in December.  In its order, the trial court explained that certain records that were "clearly protected by attorney-client privilege and/or the [attorney] work product doctrine" had been redacted.  However, the court deferred addressing the questions of whether the Report, exhibits, and the records pertaining to drafts of the Settlement Agreement were exempt from disclosure on the merits.

[¶8] In April 2024, following a hearing, the trial court issued an order on the merits that concluded in relevant part that: (1) the records deemed to be protected by attorney-client privilege and/or the attorney work product doctrine in its December 2023 order were exempt from disclosure pursuant to RSA 91-A:5, XII; and (2) the remaining records at issue were exempt pursuant to RSA 91-A:5, IV.  This appeal followed.

3

## II. Analysis

[¶9] Part I, Article 8 of the New Hampshire Constitution provides that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." N.H. CONST. pt. I, art. 8. The Right-to-Know Law provides that citizens have "the right to inspect all governmental records . . . except as otherwise provided by statute or RSA 91-A:5." RSA 91-A:4, I (2023). Thus, the Right-to-Know Law furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted. Am. Civil Liberties Union of N.H. v. City of Concord, 174 N.H. 653, 660 (2021).

### A. The Right-to-Know Law & In Camera Review

[¶10] First, we address the plaintiff's argument that the trial court erred in undertaking an in camera review of the records without counsel present. The plaintiff argues that the process for in camera review established in Petition of Keene Sentinel, 136 N.H. 121 (1992), is applicable here. We disagree.

[¶11] In Petition of Keene Sentinel, we set forth "standards and procedures to be used when a member of the public or the media seeks access to sealed court records." (Emphasis added). In relevant part, we provided that "the [trial] court shall separately examine each document in question in camera (in chambers with only counsel for the parties and for the petitioner present)." Id. We conclude that the explicit limitation of these procedures and standards to requests to access court records renders these guidelines inapplicable here. The records requested here were not court records. They were investigative records held by the District. Accordingly, the trial court did not err by declining to apply the in camera review process set forth in Petition of Keene Sentinel. This approach is consistent with our jurisprudence, which treats petitions to access sealed court records differently from Right-to-Know Law requests for governmental records. See, e.g., Petition of Keene Sentinel, 136 N.H. at 125 (distinguishing between petitions to access sealed court records and Right-to-Know Law actions).

[¶12] Next, we address the plaintiff's argument that the trial court erred in conducting its in camera review without counsel present because this process "forced [the plaintiff] to argue for access in a vacuum - uninformed of the nature and contents of documents responsive to its requests." The plaintiff specifically argues that the trial court should have provided counsel with the opportunity, either in open court or in chambers, to hear the District's arguments with respect to particular documents and to refer to the Vaughn index at the same time. We disagree.

[¶13] The trial court has broad discretion in managing the proceedings before it. In the Matter of Conner & Conner, 156 N.H. 250, 252 (2007). We

4

review a trial court's rulings in this area under our unsustainable exercise of discretion standard. See City of Concord, 174 N.H. at 664. To establish that the court erred under this standard, the plaintiff must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of its case. In the Matter of Conner & Conner, 156 N.H. at 252.

[¶14] The Right-to-Know Law requires the necessary accommodation of competing interests. City of Concord, 174 N.H. at 661. Because only the government has possession of the withheld documents, the plaintiff must argue that a document is not exempt from disclosure with only "limited knowledge" of the document's contents. Id. For that reason, the government bears the burden of demonstrating that a document is exempt from disclosure and must provide a justification for exemption sufficient for the trial court to determine the applicability of the claimed exemption and for the plaintiff to argue against the exemption with some specificity. Id.

[¶15] We have recognized that the government may take precautionary measures to prevent disclosure of the information that it wishes to keep confidential. Id. As the trial court correctly observed, we have endorsed the court's use of in camera review and/or a Vaughn index to determine the applicability of statutory exemptions under RSA 91-A:5 when accommodating these competing interests under the Right-to-Know Law. Prof'l Firefighters of N.H. v. HealthTrust, 151 N.H. 501, 506 (2004). We have generally held that "when there is a question of whether materials are exempt from public access, the trial judge should conduct an in camera review to determine whether portions of the materials meet any of the . . . statutory exemptions." Id. (quotations and brackets omitted). We have also held that "in large document cases, where the imbalance of information distorts the adversary process such that neither the plaintiffs nor the court can effectively review disputed evidence, use of a Vaughn index is entirely appropriate." Id. (quotation omitted).

[¶16] In Union Leader Corp. v. City of Nashua, 141 N.H. 473 (1996), we specifically endorsed the trial court's use of ex parte in camera review when determining whether records may be exempt under RSA 91-A:5, IV. City of Nashua, 141 N.H. at 475, 478. There, the plaintiff similarly argued that the trial court erred in conducting in camera review outside the presence of counsel. Id. at 475. We rejected this argument, reasoning that the procedure should be used cautiously and rarely but that "ex parte in camera review of records whose release may cause an invasion of privacy is plainly appropriate." Id. at 478. Here, the trial court reasonably determined that release of these records — which contain details of an investigation into alleged sexual harassment — may cause an unlawful invasion of privacy. See id. at 474-75, 478; RSA 91-A:5, IV. Consistent with our decision in City of Nashua, we therefore conclude that the trial court did not unsustainably exercise its discretion by conducting its in camera review without counsel present.

5

[¶17] Finally, we take this occasion to emphasize that in camera review without counsel present — while appropriate here — should be used "cautiously and rarely." City of Concord, 174 N.H. at 666 (quotation omitted). We reiterate that trial courts should carefully consider whether other steps short of this type of review would "accommodat[e] . . . the competing interests involved." Id. (quotation omitted).

## B. RSA 91-A:5 (2023) Exemptions

[¶18] Next, we address the plaintiff's arguments that the trial court incorrectly determined that certain exemptions pursuant to RSA 91-A:5 were applicable and protected the records sought from disclosure. See RSA 91-A:5, IV, XII (exempting confidential and personnel files whose disclosure would constitute an invasion of privacy and records protected by attorney-client privilege or the attorney work product doctrine). Resolving the issues on appeal requires us to interpret our Right-to-Know Law, which is a question of law that we review de novo. Ortolano v. City of Nashua, 177 N.H. ___, ___ (2025), 2025 N.H. 23, ¶9. We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives. Provenza v. Town of Canaan, 175 N.H. 121, 124 (2022). Accordingly, we construe provisions favoring disclosure broadly, while construing exemptions restrictively. Id.

### 1. RSA 91-A:5, XII Attorney-Client Privilege & Attorney Work Product Doctrine Exemptions

[¶19] The plaintiff argues that the trial court erred in its application of RSA 91-A:5, XII, which exempts records protected by attorney-client privilege or the attorney work product doctrine from disclosure. See RSA 91-A:5, XII. Specifically, the plaintiff maintains that the balancing test we conduct to determine whether the exemption applies to records whose disclosure would constitute an invasion of privacy pursuant to RSA 91-A:5, IV also applies to determine whether records are exempt under RSA 91-A:5, XII. On appeal, the District and the Intervenor contend that the trial court correctly found the balancing test inapplicable and properly applied the RSA 91-A:5, XII exemption. We agree with the District and the Intervenor.

[¶20] Historically, we have held that records subject to attorney-client privilege or the attorney work product doctrine were protected from disclosure under the exemption for confidential information provided by RSA 91-A:5, IV. Prof. Fire Fighters of N.H. v. N.H. Local Gov't Ctr., 163 N.H. 613, 614-15 (2012) (Professional Firefighters II); N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 104-05 (2016). However, we did not apply the balancing test to these two subsets of confidential records. See Professional Firefighters II, 163 N.H. at 614-15; N.H. Right to Life, 169 N.H. at 105-06. To determine whether the attorney-client privilege protected a record from disclosure pursuant to the

6

exemption for confidential information, RSA 91-A:5, IV, we applied the established attorney-client privilege doctrine — not the balancing test. Professional Firefighters II, 163 N.H. at 615-16. And to assess whether the attorney work product doctrine prevented disclosure of records pursuant to RSA 91-A:5, IV, we applied federal common law. N.H. Right to Life, 169 N.H. at 105-06 (addressing records relating to action pending in federal court).

[¶21] The attorney-client privilege and attorney work product doctrine have distinct and important roles within the legal system. The attorney-client privilege is firmly rooted in common law, see In re Grand Jury Subpoena (Issued July 10, 2006), 155 N.H. 557, 563 (2007), and reflects a policy of encouraging clients to consult with lawyers by enabling the free and open exchange of information between the two. Riddle Spring Realty Co. v. State, 107 N.H. 271, 274 (1966). Its purpose is to encourage full disclosure of information between an attorney and client by guaranteeing the inviolability of their confidential communications. Id. The purpose for the protection afforded to attorney work product is to preserve our adversary system of litigation by assuring an attorney that the attorney's private files, except in unusual circumstances (good cause or necessity), remain free from encroachments by an adversary. Id. at 275.

[¶22] Recently, the legislature amended RSA 91-A:5 to add a specific exemption for "[r]ecords protected under the attorney-client privilege or the attorney work product doctrine." RSA 91-A:5, XII (2023); see Laws 2021, 163:2 (adding paragraph XII to RSA 91-A:5). This 2021 amendment signals the legislature's recognition of our decisions that have treated such records differently than other records that may be exempt under RSA 91-A:5, IV. See RSA 91-A:5, IV (exempting, among other things, personnel and confidential records), XII (exempting records protected by attorney-client privilege and the attorney work product doctrine); Laws 2021, 163:2 (adding paragraph XII to RSA 91-A:5).

[¶23] Accordingly, the trial court's determination that the balancing test is inapplicable to records subject to exemption under RSA 91-A:5, XII is consistent with the legislature's amendment, the theory behind the special protections afforded by attorney-client privilege and the attorney work product doctrine, and the historical treatment of these types of records under our Right-to-Know Law jurisprudence. The trial court did not err in declining to apply the balancing test when determining whether certain records were exempt from disclosure under RSA 91-A:5, XII. We therefore affirm the trial court's ruling that the records that it determined were "clearly protected by attorney-client privilege and/or the [attorney] work product doctrine" in its December 2023 order are exempt from disclosure under RSA 91-A:5, XII.

2. RSA 91-A:5, IV Exemptions for Confidential Information &
   Personnel Files

[¶24] Next, we consider the plaintiff's argument that the trial court erred by determining that the exemptions for confidential information and personnel files pursuant to RSA 91-A:5, IV were applicable to the requested records, including the Settlement Agreement. The determination of the applicability of the RSA 91-A:5, IV exemptions for confidential information or personnel files whose disclosure would constitute an invasion of privacy requires a two-part analysis. Reid v. N.H. Attorney Gen., 169 N.H. 509, 527 (2016); Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020). First, we analyze whether the record falls into one of these enumerated categories. See Reid, 169 N.H. at 527; Town of Salem, 173 N.H. at 355. Next, we evaluate whether disclosure would constitute an invasion of privacy. See Reid, 169 N.H. at 527; Town of Salem, 173 N.H. at 355.

[¶25] In its April 2024 order, the trial court analyzed the following records, which it categorized in the following manner:

1. Investigation records
   • Records of evidence-gathering, Court Index # 23 at 1-188 except for pages 16-17, 33-44, 63-64, 80-91-110-11, 127-38, 157-58, and 174-85, which were already provided to [the plaintiff];
   • The Report, id. at 208-244;
   • Determination records, id. at 307-13;
   • Records related to an appeal, id. at 315-318;
   • The [S]ettlement [A]greement, id. at 376-82, except for pages 380-81, which were already provided to [the plaintiff];
   • Appeal decision, id. at 390.
2. Correspondence with complainant(s) and/or [the District] about evidence
   • Court Index # 23 at 245-46, 256-57, 276-79
3. Correspondence regarding the investigation process
   • Court Index # 23 at 247-250, 258-59, 269-71, 272-75, 282-83, 314
4. Records relating to the resolution of the [I]nvestigation
   • Various correspondence, Court Index # 23 at 328-34, 336-46, 364-75

[¶26] The trial court determined that these records fell within the exemptions for confidential information and/or personnel or other files whose disclosure would constitute an invasion of privacy and were exempt from disclosure under RSA 91-A:5, IV. For the purposes of this appeal, we assume that the trial court correctly determined that the records at issue fell within the enumerated categories of confidential information and/or personnel files in RSA

8

91-A:5, IV.  Therefore, we proceed to the privacy analysis.  See Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 555 (2002) (proceeding directly to the privacy analysis after "[a]ssuming without deciding that the interview materials are confidential records").

[¶27] When considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV, courts must engage in a three-step analysis.  Provenza, 175 N.H. at 130.  This balancing test applies to all categories of records enumerated in RSA 91-A:5, IV.  Id.  First, the court evaluates whether there is a privacy interest that would be invaded by the disclosure.  Id.  Second, the court assesses the public interest in disclosure.  Id. Third, the court balances the public interest in disclosure against the governmental interest in nondisclosure and the individual's interest in nondisclosure.  Id.

[¶28] On appeal, the parties do not dispute that the trial court correctly determined that the Intervenor, the District, the witnesses, and the complainants have privacy interests at stake in these records.  Rather, the parties' dispute turns on the strength of the public interest in disclosure and whether that public interest outweighs the asserted privacy interests of the District, the Intervenor, the witnesses, and the complainants.  Accordingly, we start with the second step of the three-part privacy analysis and address whether the trial court properly determined that the public interest in disclosure of the records at issue is not weighty.  The plaintiff asserts that the trial court erred in its public interest determination because the public has a significant interest in knowing how the District addressed the Intervenor's misconduct and the investigation.  We agree.

[¶29] We evaluate the strength of the public interest in conjunction with the purpose of the Right-to-Know Law.  Am. Civil Liberties Union of N.H. v. N.H. Div. of State Police, 176 N.H. 302, 312 (2023).  "The purpose of the Right-to-Know Law is to provide the utmost information to the public about what its government is up to."  Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 338 (2020) (quotation omitted).  We have recognized that the public has a strong interest in disclosure of information pertaining to its government's activities, City of Nashua, 141 N.H. at 477, and that the public has a significant interest in knowing whether a government investigation is comprehensive and accurate.  Provenza, 175 N.H. at 131.  There is a particularly strong public interest in public oversight of the government's activities with respect to its administration of processes designed to promote a safe school environment.  See Marquay v. Eno, 139 N.H. 708, 717 (1995) (recognizing that parents and students rely on the safety of the school environment and "the importance to society of the learning activity which [takes] place in public schools").[1]

---

[1] The Intervenor asserts that the public interest is diminished because some of the interactions

9

[¶30] Here, disclosure of the requested records enables the public to examine the District's management of the sexual harassment complaints against the Intervenor and its subsequent Title IX investigation. See City of Nashua, 141 N.H. at 477. For example, disclosure of the correspondence regarding the investigation process provides insight into the District's responsiveness and timeliness in its administration of its Title IX process and its compliance with the procedures therein. See Reid, 169 N.H. at 532; N.H. Civil Liberties Union v. City of Manchester, 149 N.H. 437, 441 (2003). In fact, there is no alternative, other than disclosure of these records, that enables the public to hold the District accountable for the quality and thoroughness of its investigation. See RSA 91-A:1 (2023).

[¶31] Finally, we have also observed that "knowing how a public body is spending taxpayer money in conducting public business is essential to the transparency of government, the very purpose underlying the Right-to-Know Law." Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 709 (2010). The contents of the Settlement Agreement, and particularly any information regarding the lump sum of $17,991.77 paid in addition to the Intervenor's salary, provides direct insight into the District's expenditure of taxpayer money. This payment heightens the public interest in disclosure of these records, particularly in light of the nature of the allegations against the Intervenor. Accordingly, we conclude that a substantial public interest in disclosure of these records exists.

[¶32] Nonetheless, the District, relying, in part, upon Reid v. New Hampshire Attorney General, 169 N.H. 509 (2016), argues that there is little public interest in disclosure of these records because the Intervenor is not a high-ranking employee and the allegations concern workplace misconduct that did not involve interactions with the public. The court similarly relied upon Reid to determine that the Intervenor's low rank and the lack of record support for serious misconduct by the District diminished the public interest in the records. However, the District and the trial court construe Reid too narrowly. In Reid, we stated that "the rank of the official being investigated and the seriousness of the alleged misconduct will bear upon the strength of the public interest." Reid, 169 N.H. at 532. But, we also explained that the legitimacy of the public interest in the disclosure of the records is tied to the purpose of the Right-to-Know Law, which is to provide the "utmost information to the public about what its government is up to." id. (quotation omitted). Accordingly, we conclude, for the reasons set forth above, that the extent to which the records provide information

---

alleged involved the Intervenor acting in a non-employment capacity. We disagree. These interactions were between two District employees. Furthermore, the Title IX investigation determined that these interactions constituted sexual harassment within the meaning of the District's Title IX policy because they had "the purpose and effect of substantially interfering with an employee's performance or creat[ing] an intimidating, hostile or offensive environment."

about the government's activities weighs in favor of a significant public interest in disclosure.  See Provenza, 175 N.H. at 130.

[¶33] We next proceed to the third and final step of the balancing test.  In its April 2024 order, the trial court explained that the "twin interests of the District in safeguarding the confidentiality of information that touches on employees' personal and family lives and ensuring that complainants and witnesses will continue to participate in internal investigations" were the factors that "finally . . . tipped" the balance in favor of nondisclosure.  The plaintiff contends on appeal that "[t]he public interest in disclosure outweighs any alleged privacy interests."  Specifically, the plaintiff argues that the trial court incorrectly determined that the individual privacy interests and the District's interest in nondisclosure outweighed the public interest in disclosure because "witnesses' or interviewees' names and identifying information could be redacted to address any privacy concerns."  The Intervenor and the District respond that the trial court correctly determined that redaction will not protect the privacy interests of the complainants, the witnesses, and the District and, therefore, the trial court properly determined that the documents are exempt from disclosure under RSA 91-A:5, IV.  We agree with the plaintiff.

[¶34] The third step requires the balancing of the "public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure." Reid, 169 N.H. at 532 (quotation omitted).  We have stated previously that the legislature has provided the weight to be given to one side of the balance by declaring the purpose of the Right-to-Know Law in the statute itself.  Id.  Specifically, the preamble to RSA chapter 91-A provides: "Openness in the conduct of public business is essential to a democratic society.  The purpose of this chapter is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1.  Thus, "[w]hen a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure." Reid, 169 N.H. at 532 (quotation omitted).

[¶35] We begin by addressing whether the trial court assigned the proper weight to the privacy interests of the complainants and the witnesses in conducting the balancing test.  When the records concern allegations of sexual harassment, we have emphasized that "a fact-specific inquiry is required" to determine the privacy interests at stake for such third-party witnesses and complainants.  Id. at 531.  We have recognized that a "clear privacy interest exists with respect to such information as names, addresses, and other identifying information." Id. (quotation omitted).  We have also observed that "the privacy interest in a witness's or investigation interviewee's name and identifying information will likely differ from the privacy interest in the substantive information the witness or interviewee imparts." Id. (noting that, in general, a witness or interviewee has a greater privacy interest in identifying

11

information than the substantive information imparted). However, we have declined to rule as a matter of law that third-party witnesses and interviewees have no privacy interest in any of the substantive information contained within investigation records. See id.

[¶36] Here, the trial court determined that the complainants and witnesses have significant privacy interests at stake. The trial court based its determination, in part, on its observation that the size of the institution and the small number of District employees made it "unlikely the privacy of [the witnesses and complainants] can be protected by a piecemeal redaction of their names." (Emphasis added.) In making this determination, the trial court incorrectly applied our redaction doctrine under the Right-to-Know Law by assuming that redaction would be limited to names and would not encompass other identifying information.

[¶37] We have recognized that "[u]nder some circumstances, individuals retain a strong privacy interest in their identities, and information identifying individuals may be withheld to protect that privacy interest." N.H. Right to Life, 169 N.H. at 117 (quotation omitted). Specifically, we have upheld redactions made to records disclosed pursuant to RSA chapter 91-A when the privacy interests in names or other identifying information outweigh the public interest in disclosure of the redacted information. See, e.g., N.H. Right to Life, 169 N.H. at 100, 117-21; see also Provenza, 175 N.H. at 124, 131. Here, the disclosure of any individual's name, room number, position, or subjects taught that are contained within the records would "reveal nothing about the government and its activities." N.H. Right to Life, 169 N.H. at 121. Therefore, redaction of this identifying information is warranted.

[¶38] We agree with the trial court's determination that these individuals "have a strong personal interest in keeping the details of their personal or family lives confidential," as the records concern allegations of sexual harassment. See Provenza, 175 N.H. at 130 (recognizing that records that reveal intimate details of the subject's life strengthen the privacy interest at stake). Redaction of all identifying information increases the privacy protections afforded to complainants and witnesses upon disclosure of the investigation records.[2] To

---

[2] The Report and other documents contain descriptions of certain conduct of a minor and statements that the Intervenor made in response to this conduct. The trial court found that redaction of information related to the minor would remove the context of these statements attributed to the Intervenor and thus risk being misunderstood to the Intervenor's detriment. On appeal, the Intervenor and the District assert that redaction of this information increases the Intervenor's privacy interest due to this risk. After reviewing the Report and other records, we disagree. The removal of the descriptions of the minor's conduct does not meaningfully change the meaning of the statements attributed to the Intervenor. Accordingly, redaction does not subject him to any greater risk of "stigma, embarrassment, and reputational injury" or "disgrace, loss of employment, or friends," see Reid v. N.H. Attorney Gen., 169 N.H. 509, 530 (2016), and thereby has no impact on his privacy interest.

12

the extent that the District asserts its own interest in nondisclosure because release of the records risks chilling the cooperation of complainants and witnesses to participate in internal investigations, we conclude that the protections afforded by redaction adequately address any concerns about deterrence.  See Reid, 169 N.H. at 533.

[¶39] Next, we proceed to the balancing test itself.  When we balance the reduced privacy interests of the complainants and the witnesses, the Intervenor's asserted privacy interest, and the asserted government interest in nondisclosure against the significant public interest in disclosure — given that these documents would provide substantial information about what the government is "up to" — the governmental interest in nondisclosure no longer tips the balance in favor of nondisclosure.  Instead, the balance weighs in favor of disclosure.  Therefore, the records that the trial court deemed exempt pursuant to RSA 91-A:5, IV — including the Settlement Agreement — are subject to disclosure with appropriate redactions.

## C. RSA 91-A:4, I-a & Attorney's Fees & Costs

[¶40] We next address whether the trial court erred in denying the plaintiff's request for attorney's fees and costs, particularly with respect to the District's violation of RSA 91-A:4, I-a.  On appeal, the plaintiff argues that it is entitled to "[a]ttorney's fees and costs, particularly with respect to the requests as they pertain to violations of RSA 91-A:4." (Emphasis omitted.)  The Intervenor and the District counter that the trial court properly determined that the plaintiff is not entitled to receive attorney's fees and costs with respect to the violation of RSA 91-A:4, I-a.  They argue that, because the District provided a document to the plaintiff that contained a narrative description of the payments the District made to the Intervenor, they satisfied RSA 91-A:4, I-a's statutory mandate that records of payment made to public employees upon leaving employment be immediately available for public inspection.  See RSA 91-A:4, I-a.  The District further argues that attorney's fees and costs for the records that the trial court deemed exempt pursuant to RSA 91-A:5, IV should not be awarded.  We agree with the plaintiff as to the fees and costs associated with the District's violation of RSA 91-A:4, I-a, and we remand for the trial court to determine whether fees and costs should be awarded with respect to the records, including the Settlement Agreement, that the court erroneously deemed exempt pursuant to RSA 91-A:5, IV.

[¶41] Pursuant to RSA 91-A:8, I (2023), an agency "shall be liable for reasonable attorney's fees and costs incurred" if the trial court finds that: (1) the agency violated any provision of RSA chapter 91-A; (2) the lawsuit "was necessary in order to make the information available"; and (3) the agency knew or should have known that the conduct engaged in violated RSA chapter 91-A.  38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 669 (2012) (quotations omitted).  Costs shall be awarded upon the trial court's finding of the second

element identified above.  See Michaud v. Town of Campton Police Dep't, 176 N.H. 542, 550 (2024), 2024 N.H. 19, ¶22.  We defer to the trial court's findings of fact unless they are unsupported by the evidence or erroneous as a matter of law.  Id.

[¶42] We first turn to whether the District violated RSA 91-A:4, I-a.  The document that the District provided to the plaintiff, entitled "Fall Mountain Regional School District/[the Intervenor] RSA 91-A:4-1-a," stated, in relevant part:

> The school district paid [the Intervenor] the sum of $17,991.77 and continues to pay its share of [the Intervenor's] health insurance, (80%) as provided in the parties' collective bargaining agreement through October 31, 2022.  These payments were in addition to the regular salary and accrued vacation, sick or other leave, to which [the Intervenor] was entitled.

The trial court concluded that the plaintiff was not entitled to attorney's fees because the document the District provided to the plaintiff "by its own terms expressly satisfies" the requirements of RSA 91-A:4, I-a.  We disagree.

[¶43] Determining whether the District satisfied the requirements of RSA 91-A:4, I-a by providing the plaintiff with this document requires that we engage in statutory interpretation.  Statutory interpretation presents a question of law that we review de novo.  Union Leader Corp. v. N.H. Retirement Sys., 162 N.H. 673, 676 (2011).  The ordinary rules of statutory construction apply to our review of the Right-to-Know Law.  N.H. Div. of State Police, 176 N.H. at 306.  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We also interpret a statute in the context of the overall statutory scheme and not in isolation.  Id.  The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect.  O'Donnell v. Allstate Indem. Co., 173 N.H. 295, 300 (2020).

[¶44] RSA 91-A:4, I-a provides: "Records of any payment made to an employee of any public body or agency listed in RSA 91-A:I-a, VI(a)-(d) . . . upon the resignation, discharge, or retirement of the employee, paid in addition to regular salary and accrued vacation, sick, or other leave, shall immediately be made available without alteration for public inspection."  RSA 91-A:4, I-a (2023) (emphasis added).  The term "without alteration" is necessary only if the statute requires that the record furnished for public review is an original document evidencing the actual payments made during a financial transaction, such as a bank statement or invoice.  To give every word of the statute effect, the terms "records of payments" and "[r]ecords of any payment" must refer to original

14

documents that evidence the actual payments made rather than a narrative summary of these payments. RSA 91-A:4, I-a.

[¶45] Thus, the trial court erred in determining that the document provided to the plaintiff satisfied the District's statutory obligation pursuant to RSA 91-A:4, I-a. Accordingly, we conclude that RSA 91-A:4, I-a requires the District to disclose the unaltered bank statements, invoices, or other financial records evidencing the actual payment of the $17,991.77 lump sum and the 80% share of the Intervenor's health insurance premiums. Redaction may be used to protect any confidential information included in these documents. See RSA 91-A:5, IV (exempting from disclosure "confidential, commercial, or financial information . . . whose disclosure would constitute an invasion of privacy").

[¶46] Having concluded that the District violated RSA 91-A:4, I-a, we turn to whether this lawsuit was "necessary in order to make the information available" and whether the District knew or should have known that its conduct violated RSA chapter 91-A. See 38 Endicott St. N., 163 N.H. at 669 (quotation omitted). The plaintiff argues that the lawsuit was necessary to access information about the payments made to the Intervenor in addition to his salary and accrued leave time. Further, the plaintiff contends that the District knew or should have known its conduct violated RSA 91-A:4, I-a because the RSA 91-A:4, I-a statement did not include the amount paid for the health insurance and did not adequately record the payments made. We agree.

[¶47] The record in this case demonstrates that the lawsuit was necessary to make the records of payment made to the Intervenor, in addition to his regular salary or leave, available. The plaintiff submitted its initial request for "any and all documents from [the District] . . . related to the resolution of an investigation concerning [the Intervenor]" in August 2022. After the District declined several times to provide the records, the plaintiff filed its Right-to-Know Law complaint with the trial court. The District subsequently provided the RSA 91-A:4, I-a narrative statement — not any actual records of payment. See N.H. Challenge v. Commissioner, N.H. Dep't of Educ., 142 N.H. 246, 249-50 (1997). On appeal, the District continues to argue that its RSA 91-A:4, I-a statement satisfied its obligations under the statutory provision. Accordingly, it cannot be disputed that the plaintiff's lawsuit was necessary to make the records of payment for the lump sum of $17,991.77 and the 80% share of the health insurance premiums available. See Goode, 148 N.H. at 558.

[¶48] Therefore, we conclude as a matter of law that the District should have known that this narrative summary would not satisfy the statutory mandate, cf. N.H. Right to Life, 169 N.H. at 128, and determine that the plaintiff is entitled to an award of attorney's fees and costs for the expenses associated with its RSA 91-A:4, I-a claim. With respect to the records — including the Settlement Agreement — that the District withheld based upon its belief that the

15

exemptions pursuant to RSA 91-A:5, IV were applicable, we remand the issue of whether attorney's fees and costs should be awarded pursuant to RSA 91-A:8 to the trial court.  See Michaud, 176 N.H. at 550, 2024 N.H. 19, ¶23.

### III.   Conclusion

[¶49] We conclude that the trial court did not err in conducting its in camera review without the presence of counsel because release of the requested records presented a risk of an unlawful invasion of privacy.  RSA 91-A:5, IV. We also conclude that no balancing test is applicable to the attorney-client privilege and attorney work product exemptions provided by RSA 91-A:5, XII. Rather, we apply the established doctrines for attorney-client privilege and attorney work product doctrine to determine whether records are exempt pursuant to RSA 91-A:5, XII.  Accordingly, we affirm the trial court's ruling that the records identified in its December 2023 order as "clearly protected by attorney-client privilege and/or the [attorney] work product doctrine" are exempt under RSA 91-A:5, XII.

[¶50] We further conclude that the trial court erred in its application of the RSA 91-A:5, IV exemptions.  The records that the trial court determined were exempt pursuant to RSA 91-A:5, IV, including the Settlement Agreement, are subject to disclosure under RSA 91-A:4, I, with appropriate redactions consistent with this opinion.  We remand to the trial court the issue of whether attorney's fees and costs should be awarded for the District's violation of RSA chapter 91-A with respect to these records.

[¶51] Finally, we conclude that RSA 91-A:4, I-a requires the disclosure of the records of payments made to an employee upon resignation, discharge, or termination, in addition to regular salary and accrued leave time.  See RSA 91-A:4, I-a.  In addition, we conclude that the plaintiff is entitled to attorney's fees and costs with respect to the District's violation of RSA 91-A:4, I-a and remand for the trial court to determine the appropriate amount of fees and costs.  We have considered the parties' remaining arguments and conclude that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

> Affirmed in part; reversed in part; and remanded.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.